IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOSE S. CRUZ and LUCIA CRUZ, §
§
Plaintiffs, §
§ Civil Action No. 3:16-CV-2468-D
VS. §
§
WEBER-STEPHEN PRODUCTS, LLC, §
§
Defendant. §

MEMORANDUM OPINION
AND ORDER

In this personal injury action by plaintiffs Jose S. Cruz ("Jose") and Lucia Cruz (collectively, "the Cruzes") against defendant Weber-Stephen Products LLC ("Weber"), a propane gas grill designer and manufacturer, Weber moves for leave to file third-party complaint, or, in the alternative, for leave to designate responsible third parties. For the reasons that follow, the court grants the motion for leave to file third-party complaint, and it denies as moot the alternative motion for leave to designate responsible third parties.

I

This lawsuit arises from a fire that occurred while Jose was using a Weber portable propane gas grill. On August 26, 2016 the Cruzes sued Weber, alleging that a design defect in the grill caused the flames that injured Jose. Weber moves for leave to file a third-party complaint against McWane, Inc. ("McWane"), the manufacturer of the propane tank, and four entities related to the AmeriGas brand, which maintained the propane tank: AmeriGas, Inc., AmeriGas Propane, L.P., AmeriGas Propane, Inc., and AmeriGas Propane Parts &

Service, Inc.[1]

Thus far, Weber has had three opportunities to inspect the Cruzes's grill. One of its experts, Jon B. Ver Halen, P.E. ("Ver Halen"), attended the first inspection on January 20, 2016 at the Cruzes's residence. Experts for Amerigas and Manchester Tank, the division of McWane that manufactures the propane tank, as well as Manchester Tank's attorney, were also present for this inspection. On February 23, 2016 a second inspection occurred at the Cruzes's expert's facility. During this inspection, Weber's expert, Aaron J. Jones, P.E., disassembled the grill and tank and conducted a more in-depth review of the grill.[2] Manchester Tank and Amerigas' experts were present as well.

Between the second and third inspections, the Cruzes filed a second amended complaint on August 24, 2017. This amended complaint contained new theories of liability,[3] which led Weber to request a third inspection on October 12, 2016 to reevaluate the technical

---

[1] A label on the propane tank in question indicated that "Amerigas" maintained the propane in the tank. At this point, Weber is uncertain which specific Amerigas entity was responsible for the tank in question. It states that, once the responsible entity is determined, it will dismiss its claims against the other entities. D. Mot. 3.

[2] Weber's attorney, Jason Spivey, Esquire, also attended this inspection.

[3] Weber maintains that

> [t]he [second amended complaint] radically changed the liability allegations. Instead of the length of the spud and a metal vs. plastic allegation, the Plaintiff added allegations that the diameter of the plastic threaded nut component of the regulator was too small which caused stresses on the nut resulting in a crack and failure.

D. Mot. 2.

issues. At this inspection, Weber's experts, including Ver Halen, examined for the first time the propane tank that supplied fuel to the grill.[4] A leak test revealed a sustained leak related to a defect in the rubber seal in the propane tank. Until this point, neither the Cruzes's nor Weber's experts had reported a defect in the tank. By the time of this discovery, the deadlines to move for leave to join parties and to designate experts had expired.[5]

Weber designated Ver Halen as an expert on November 13, 2017. Weber moved on November 22, 2017 for leave to file a third-party complaint, or, in the alternative, for leave to designate responsible third parties. The Cruzes oppose the motion and alternative motion.

II

The court's amended scheduling order required that the parties move for leave to join other parties by August 7, 2017. Weber's motion is therefore untimely. Accordingly, the court must decide as a threshold question whether Weber has shown good cause to modify the amended scheduling order so that its motion can be filed and considered.

---

[4]Weber asserts: "As part of that inspection, it was necessary to measure the tank threads to see if there was actually interference between the regulator's thread diameters and the tank threads, since this was the basis of Plaintiffs' new theory." D. Reply 2.

[5]The amended scheduling order set August 7, 2017 as the deadline for a party to file a motion for leave to join other parties and September 29, 2017 as the deadline for a party with the burden of proof on a claim or defense to designate expert witnesses and otherwise comply with Fed. R. Civ. P. 26(a)(2).

A

When, as here, the deadline for seeking leave to join parties has expired, a court considering a motion for leave to join parties must first determine whether to modify the scheduling order under the Fed. R. Civ. P. 16(b)(4) good cause standard. *See S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.). To meet the good cause standard, Weber must show that, despite its diligence, it could not reasonably have met the scheduling order deadline. *See S & W Enters.*, 315 F.3d at 535.

"In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: (1) the party's explanation, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice." *Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at *3 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.) (citing *S & W Enters.*, 315 F. 3d at 536). The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps.*, Inc., 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

B

Considering the four factors holistically, the court concludes that Weber has met the good cause standard of Rule 16(b)(4) for modifying the amended scheduling order.[6] Weber

---

[6]Weber's showing of good cause also allows it to designate expert Ver Halen after the September 29, 2017 deadline for a party with the burden of proof on a claim or defense to

has offered a legitimate explanation for its delay in seeking leave to join parties.[7]  If the leaking tank is shown to have been a cause of Jose's injuries, Weber's ability to seek contribution from third parties responsible for the tank is of great importance.  Furthermore, the Cruzes have not established why the addition of these third parties affects their ability to recover against Weber.  They maintain that the statute of limitations bars their ability to bring direct claims against these third parties.  But the addition of third parties has no relation to the Cruzes's decision to forgo asserting direct claims against these parties during the limitations period.  The fourth factor also weighs in Weber's favor.  The trial date is currently scheduled for the two-week docket of July 9, 2018—about seven months away.  And even assuming *arguendo* that the joinder of third-party defendants will require additional discovery and/or the designation of rebuttal experts, the court can cure any potential prejudice by continuing the trial.

    The court concludes that Weber has satisfied the requirements under Rule 16(b)(4) for modifying the amended scheduling order to permit Weber to file the instant motion for leave to file a third-party complaint.

---

designate expert witnesses and otherwise comply with Rule 26(a)(2).

    [7]Weber maintains that the tank defect was only discovered at the third inspection as a result of its decision to take a different approach to the investigation based on new allegations in the Cruzes's second amended complaint.  The initial allegations centered on alleged defects in the subject regulator, while later allegations required examination of the propane tank.

III

The court now considers whether Weber should be permitted to file the proposed third-party complaint to implead the parties in question.

A

Rule 14(a) provides that a defending party, as third-party plaintiff, may sue "a nonparty who is or may be liable to it for all or part of the claim against it." The policy underlying Rule 14 is to promote judicial economy by eliminating circuitous actions. *See* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1442, at 339 (3d ed. 2010 & Supp. 2011). Impleader is appropriate, however, "only in cases where the third party's liability [is] in some way derivative of the outcome of the main claim." *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967); *see also Am. Express Travel Related Servs. Co. v. Beaumont*, 2002 WL 31298867, at *2 (N.D. Tex. Oct. 9, 2002) (Buchmeyer, J.) ("[T]he procedural device of impleader [may only be used] when the third party defendant's potential liability is dependent upon the outcome of the main claim."). In other words, "the third party must necessarily be liable over to the defendant for all or part of the plaintiff's recovery." *Joe Grasso & Son*, 380 F.2d at 751. "The third-party procedure is not designed as a vehicle for the trying together of separate and distinct causes of action, or for the introduction, into the main action, of several parallel, but independent, actions, or separate and independent claims [.]" *Majors v. Am. Nat'l Bank of Huntsville*, 426 F.2d 566, 568 (5th Cir. 1970) (per curiam) (internal quotation marks and citations omitted). If the third-party claim is an entirely independent claim, it will be dismissed even if it arises from

the same set of facts as the original claim. *See Baylor Univ. Med. Ctr. v. Epoch Grp., L.C.*, 2005 WL 2124126, at *4 (N.D. Tex. Sept. 1, 2005) (Fish, C.J.) (citing *Joe Grasso & Son*, 380 F.2d at 751).

> The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against [it] by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough.

Wright & Miller, *supra*, § 1446, at 431-32.

B

Apart from their opposition to Weber's impleader request based principally on its timing (and on the timing of designating Ver Halen as an expert in support of the third-party complaint),[8] the Cruzes have not articulated any reason why Weber should not be permitted to file a third-party complaint under Rule 14.[9] The court has already concluded that Weber has demonstrated good cause under Rule 16(b)(4) to modify the amended scheduling order so that it can file the motion. And Weber is seeking to assert a contribution claim against the proposed third parties. "The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory." *Martco Ltd.*

---

[8]The Cruzes also challenge the opinions of Weber's experts, but the Cruzes rely primarily on the timing of the disclosure. *See* Ps. Resp. 4-5

[9]The Cruzes challenge Weber's alternative motion on a ground unrelated to timing (the effect of the statute of limitations), but the court need not reach it because the court is denying the motion as moot.

*P'ship v. Bruks Inc.*, 430 Fed. Appx. 332, 334 (5th Cir. 2011) (per curiam). The court therefore holds that impleader of these third parties is proper under Rule 14 and that Weber's motion for leave to file third-party complaint should be granted.

\* \* \*

Accordingly, the court grants Weber's motion for leave to file third-party complaint and directs the clerk of court file Weber's proposed third-party complaint today. The court denies as moot Weber's alternative motion for leave to designate responsible third parties.

**SO ORDERED**.

January 4, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE